Case 2:22-cv-00068   Document 12   Filed on 05/13/22 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
May 13, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GREGORIO GARCIA, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00068 |
| | § | |
| M. CROW, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM AND RECOMMENDATION
# TO DISMISS CASE

Plaintiff Gregorio Garcia, III, a Texas inmate appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, the undersigned recommends that: (1) Plaintiff's claims for money damages against **Senior Warden M. Crow and Assistant Warden I. Wysocki** in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claims seeking injunctive relief against **Defendants** in their individual and official capacities be **DISMISSED**; (3) Plaintiff's remaining claims against **Defendants** in their individual capacities for monetary relief be **DISMISSED with prejudice** as frivolous

and/or for failure to state a claim for relief pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1); and (4) the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division and is currently housed at the Willacy Unit in Raymondville, Texas. Plaintiff's claims in this lawsuit occurred in connection with his prior housing assignment at the Garza West Unit in Beeville, Texas.

In this civil rights action, Plaintiff sues the following Garza West Unit officials: (1) Senior Warden M. Crow; (2) Assistant Warden I. Wysocki; and (3) Unit Grievance Investigator (UGI) G. Flores. (D.E. 1, pp. 1, 3, 10). Plaintiff generally alleges that Defendants acted with deliberate indifference to his health in violation of his Eighth Amendment rights. Plaintiff seeks injunctive relief as well as compensatory and punitive damages. (D.E. 1 at 4; D.E. 10 at 25).

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

2 / 19

On May 4, 2022, the undersigned conducted a *Spears*[2] hearing. The following representations were made either in Plaintiff's Original Complaint (D.E. 1) or at the *Spears* hearing. Plaintiff arrived at the Garza West Unit on December 21, 2021, upon being transferred from Harris County. (D.E. 10, pp. 2-3). Plaintiff remained in custody at the Garza West Unit until February 9, 2022, when he was transferred to the Willacy Unit. (*Id.* at 3).

Upon arrival at the Garza West Unit, numerous unidentified intake officers administered a COVID-19 test to Plaintiff and the other inmates transferred from Harris County to that unit. (D.E. 10 at 5). Plaintiff tested negatively for COVID-19 and was then placed in a fourteen-day quarantine pursuant to protocols set forth in the Correctional Managed Health Care (CMHC) infection control manual. (D.E. 1 at 4; D.E. 10 at 4-5, 9). While in quarantine, Plaintiff and his fellow inmates who tested negatively at intake were locked down in the dormitory. (D.E. 10 at 6). Food was brought to them three times a day. (*Id.*). The officers at the Garza West Unit urged the inmates to wear cloth masks. (*Id.*).

The quarantine was lifted for Plaintiff on January 6, 2022, and he was placed back in general population. (D.E. 1 at 4; D.E. 10 at 7). Later that evening, new inmates from Bexar County arrived at the Garza West Unit. (D.E. 10 at 7). These inmates were not tested for COVID-19 at intake and were instead tested in Bexar County before the transfer. (*Id.*). Even though the Bexar County inmates were not tested for COVID-19 upon arrival

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

at the Garza West Unit, they were placed in general population in violation of CMHC COVID-19 protocols. (*Id.* at 7, 10-11). According to Plaintiff, Assistant Warden Wysocki is responsible for ensuring that inmates in transit to the Garza West Unit be tested for COVID-19 at intake. (*Id.* at 8).

On January 7, 2022, Plaintiff and all other inmates in his dormitory, including the new inmates from Bexar County, were tested for COVID-19. (D.E. 1 at 4; D.E. 10 at 11). Some of the new arrivals from Bexar County tested positive and were removed from the dormitory. (*Id.*). Plaintiff testified at the *Spears* hearing that four people who tested positive for COVID-19 had to be taken to the hospital. (D.E. 10 at 13). Plaintiff's test on January 7, 2022 was negative for COVID-19. (D.E. 10 at 11-12).

Plaintiff and the other inmates in his dormitory were placed in another fourteen-day quarantine. (D.E. 1 at 4; D.E. 10 at 14). Plaintiff fell ill for several days during this time period but was not given any medical attention despite submitting several requests to visit medical. (*Id.*). Plaintiff experienced the following symptoms while sick: fever, no appetite, fatigue, and inability to move. (D.E. 10 at 15). Plaintiff eventually felt better on his own. (*Id.* at 14). Plaintiff never tested positive for COVID-19 during his time incarcerated at the Garza West Unit. (*Id.* at 15).

Plaintiff filed a Step 1 grievance complaining about the handling of the inmates who were not tested upon arriving at the Garza West Unit but later found to be positive following the COVID-19 test administered on January 7, 2022. (D.E. 1, pp. 8-9). Senior Warden Crow rejected Plaintiff's Step 1 grievance, finding no evidence to corroborate

Plaintiff's allegations of staff misconduct. (*Id.* at 9). Warden Crow further determined that all COVID-19 protocols were followed as set forth by the CMHC infection control manual. (*Id.*).

Plaintiff filed a Step 2 grievance, disputing the finding that all protocols were followed. (*Id.* at 6-7). Plaintiff cited the fact that these inmates from another county were not tested during the intake process. (*Id.* at 6). The reviewing officer denied Plaintiff's Step 2 grievance, finding that: (1) every inmate was tested for COVID-19 upon arrival at the Garza West Unit except for inmates from one county jail; (2) the county jail at issue tests inmates immediately before transferring them to TDCJ units; (3) if an inmate tests positive from that county jail, that inmate is not transferred from that facility; and (4) the Garza West Unit was instructed to conduct mass testing on January 7, 2022 due to high percentage of COVID-19 cases in general with the agency. (*Id.* at 7).

When Plaintiff became ill during his second fourteen-day quarantine period, toilet water flooded inside his cell and settled all around his bunk. (*Id.* at 16-17). A prison sergeant informed Plaintiff that he would direct the matter to the maintenance department. (*Id.* at 17, 19). It took two weeks for maintenance to address the flooded toilet water. (*Id.* at 17). Eventually, the toilet water evaporated. (*Id.*).

Plaintiff further alleges that mice were present in Plaintiff's cell during the time when he was sick. (*Id.*). The mice found their way into his sack meals, making them inedible. (*Id.*). Mice infiltrated every inmate's personal stuff in the dormitory, and it was a never-ending problem. (*Id.*).

Plaintiff, however, was not physically injured as a result of the conditions involving the mice and water around his bunk. (*Id.* at 20). According to Plaintiff, Warden Crow was responsible for these conditions in and around his cell, and the fact they were overlooked amounted to negligence. (*Id.* at 21). Plaintiff filed Step 1 and Step 2 grievances complaining about the mice and the toilet water flooding his cell. (*Id.* at 19). UGI Flores, however, has yet to respond to his Step 2 grievance. (*Id.*).

Plaintiff sues Warden Crow in his individual and official capacity on the basis that his response to Plaintiff's Step 1 grievance was erroneous. (D.E. 1 at 10; D.E. 10 at 22). Plaintiff also seek to hold Warden Crow accountable in his supervisory capacity. (D.E. 10 at 21-22). Plaintiff sues Assistant Warden Wysocki in her individual and official capacity because she was in charge of the intake process and should have known that inmates in transit should immediately be tested for COVID-19 and were not to be housed immediately with the general population. (D.E. 1 at 10; D.E. 10 at 22-24). Plaintiff sues UGI Flores in her individual capacity as the person responsible for conducting an impartial investigation into Plaintiff's complaints contained in their grievances. (D.E. 1 at 10; D.E. 10 at 24). According to Plaintiff, Flores undermined the integrity of the grievance process. (D.E. 1 at 10).

## III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.     DISCUSSION

### A.     Eleventh amendment immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S.

159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues Warden Crow and Assistant Warden Wysocki in their official capacities for money damages, his claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against these defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### B.   Injunctive Relief

Plaintiff's transfer from the Garza West Unit to the Willacy Unit renders moot any claim seeking injunctive relief for issues arising to his conditions of confinement at the Garza West Unit. *See  Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)); *Sias v. Jacobs*, No. 6:17cv413, 2017 WL 8229544, at *4 (E.D. Tex. Dec. 11, 2017); *King v. TDCJ*, No 3:15-CV-1365, 2016 WL 8671926, at *2 (N.D. Tex. Jan. 8, 2016). Accordingly, the undersigned respectfully recommends that his claims for injunctive relief against Defendants in their individual and official capacities be dismissed.

### C. Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The test for deliberate indifference has both an objective and subjective prong. *Id.* at 839. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must establish that the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021) (citing *Farmer*, 511 U.S. at 397 and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). The Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)). *See also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials

must have actual knowledge of the substantial risk"). The Supreme Court further explains that "an official's failure to alleviate a significant risk that he should have perceived but did not" falls short of constituting deliberate indifference. *Farmer*, 511 U.S. at 838.

### *(1) Supervisory Official*

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

With respect to his deliberate indifference claims, Plaintiff seeks to hold Warden Crow accountable in his supervisory capacity as he should be held responsible for the actions of his employees. (D.E. 10 at 21-22). While Plaintiff's allegations suggest that Warden Crow may have been aware of his exposure to COVID-19 and the conditions of his cell, he alleges nothing to suggest that Warden Crow had any personal involvement in these incidents. Plaintiff, therefore, has failed to allege a plausible claim against Warden Crow in his role as a supervisory official. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against Warden Crow in his

supervisory capacity be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### *(2) Grievances*

Plaintiff claims that Warden Crow erroneously responded to Plaintiff's Step 1 grievance complaining about his exposure to COVID-19. (D.E. 1 at 10; D.E. 10 at 22). Plaintiff further claims that UGI Flores: (1) failed to conduct an impartial investigation into his grievances complaining about COVID-19; and (2) failed to respond to his Step 2 grievance related to the infestation of mice and toilet water flood. (D.E. 1 at 10; D.E. 10 at 19, 24).

Plaintiff's allegations against Warden Crow and UGI Flores center on his dissatisfaction with their failure to investigate Plaintiff's grievances and then rule in his favor. Such allegations, however, fail to state a cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Warden Crow and UGI Flores, related to grievance process, be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### (3) COVID-19

"There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates." *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020). However,"[i]n evaluating a prison's response [to the COVID-19 pandemic], deliberate indifference cannot be inferred from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021) (quoting *Thompson v. Upshur Cnty. Tex.*, 245 F.3d 447, 459 (5th Cir. 2001) and citing *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020)). "It requires a showing of a wanton disregard for the prisoners' safety or recklessness." *Id.* (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2001)). The focus of the inquiry is whether the prison official "recklessly responded to the risk of COVID-19" and "subjectively knew of substantial risks of harm" to the inmate. *Id.* at 282.

Plaintiff alleges that Assistant Warden Wysocki acted as the official in charge of intake procedures and protocols. (D.E. 10 at 8). Plaintiff claims that Assistant Warden Wysocki acted with deliberate indifference to his health by not following certain protocols in place and exposing him to inmates testing positive for COVID-19.

Plaintiff's allegations indicate that, according to the CMHC COVID-19 protocols, he was tested for COVID-19 upon his arrival at the Garza West Unit on December 21, 2021, that he was immediately placed into a fourteen-day quarantine, and that he was placed into the general population after the quarantine period ended on January 6, 2022. (D.E. 1 at 4; D.E. 10 at 4-5).  According to Plaintiff, these protocols were not followed by prison officials when transit inmates from Bexar County, arriving on January 6, 2022, were not tested for COVID-19, and instead were immediately assigned to Plaintiff's dormitory in general population.  (D.E. 10 at 7, 10-11).

Even accepting as true that the COVID-19 protocols were not strictly followed with respect to the Bexar County inmates, Plaintiff's allegations fail to indicate that Assistant Warden Wysocki knew of and then disregarded a substantial risk of serious harm to Plaintiff.  Plaintiff provides no allegations that Assistant Wysocki, or any other official at the Garza West Unit, was aware that any inmate from Bexar County already had tested positive for COVID-19 upon their arrival as each inmate had had been tested before leaving Bexar County.

To alleviate any potential risks arising from the Bexar County inmates, Plaintiff's allegations reflect that: (1) all inmates housed in Plaintiff's dormitory were tested for COVID-19 on January 7, 2022, one day after the Bexar County inmates were assigned to Plaintiff's dormitory (D.E. 1 at 4; D.E. 10 at 11); (2) all inmates who tested positive for COVID-19 following the January 7, 2022 test were removed from the dormitory immediately; and (3) any inmate who tested negative, including Plaintiff, was placed back

in a fourteen-day quarantine. (D.E. 1 at 4; D.E. 10 at 11-14). While Plaintiff indicates that he became sick shortly after the second test,[3] he does not allege that he ever tested positive for COVID-19 while housed at the Garza West Unit. (D.E. 10 at 14-15).

Assuming that Assistant Warden Wysocki was in charge of intake when the Bexar County inmates arrived as well as administering the January 7, 2022 test, Plaintiff's allegations fail to suggest that she acted in such a reckless manner as to exhibit a wanton disregard for Plaintiff's health. At best, Plaintiff's allegations suggest that Assistant Wysocki may have acted negligently in failing to apply the CMHC COVID-19 protocols to the Harris County inmates as soon as they arrived at the Garza West Unit. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim against Assistant Warden Wysocki arising from his exposure to COVID-19 be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### (4) *Toilet Water and Mice*

In accessing prisoner allegations of unconstitutional conditions of confinement, the Supreme Court has noted that some complained-of conditions amount to no more than "a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright,* 430 U.S. 651, 674 (1977). Moreover, the Supreme Court has further explained

---

[3] Plaintiff alleges that he did not receive any treatment for his sickness despite submitting numerous medical requests during his second fourteen-day quarantine. (D.E. 10 at 14). Plaintiff, however, alleges no facts to suggest that any named defendant in this case was personally responsible for denying him medical care. He further does not name any medical official from the Garza West Unit in this action.

that it is necessary to consider the duration of the plaintiff's exposure to the complained-of condition. *See Hutto v. Finney,* 437 U.S. 678, 686–87 (1978).

Following this guidance, the Fifth Circuit Court of Appeals and other circuit courts have recognized that a filthy cell may be tolerable and not an Eighth Amendment violation for a few days but intolerably cruel and unusual for a time period of weeks or months. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hutto*, 437 U.S. at 686-87); *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989) (citing *Hutto,* 437 U.S. at 687); *see also White v. Nix,* 7 F.3d 120, 121 (8th Cir.1993) (a prisoner confined to an allegedly unsanitary cell for eleven days could not prove an Eighth Amendment violation due to "relative brevity" of his stay); *Harris v. Fleming,* 839 F.2d 1232, 1235–36 (7th Cir. 1988) (filthy, roach-infested cell for five days does not amount to constitutional violation). However, there is no exact time calculation, and with certain conditions, or combination of conditions, the short duration of the exposure does not eliminate the violation. *See e.g., McBride v. Deer*, 240 F.3d 1287, 1291-92 (10th Cir. 2001) (finding an Eighth Amendment violation where a prisoner was forced to live in a feces-covered cell for three days); *LaReau v. MacDougal*, 473 F.2d 974, 978 (2d Cir. 1972) (prisoner's Eighth Amendment rights were violated where he was forced to "live, eat, and perhaps sleep in close confines with his own human waste" for five days).

To the extent that Plaintiff seeks compensatory damages for his Eighth Amendment claims related to the conditions of his cell, such claims are barred by 42 U.S.C. § 1997e(e). This statute provides that "[n]o Federal civil action may be brought by a prisoner confined

in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury ….” 42 U.S.C. § 1997e(e). Plaintiff acknowledged at the *Spears* hearing that he was not physically injured as a result of the conditions involving the mice and water around his bunk. (D.E. 10 at 20). Plaintiff's failure to allege any physical injury operates to bar any claim for compensatory monetary damages.

Plaintiff is not entitled to punitive damages or any other forms of relief as his Eighth Amendment claims related to the conditions of his cell fail to state a plausible § 1983 claim. Plaintiff alleges that he informed a prison sergeant about the toilet water flooding his cell and that the unit's maintenance addressed the matter two weeks later. (D.E. 10 at 16-17, 19). Plaintiff alleges no facts to suggest that the toilet water in his cell placed him at a substantial risk of serious harm, that any named defendant was aware of any risks posed to Plaintiff by the toilet water, or that any named defendant choose to disregard such risk. At best, Plaintiff's allegations suggest that prison officials may have acted negligently in failing to resolve the matter in a more expedient fashion.

With regard to the mice infestation, Plaintiff alleges that mice infiltrated his personal belongings and even found their way into his sack meals, making them inedible. (D.E. 10 at 17). Plaintiff alleges no facts to suggest that he suffered any food poisoning during his stay at the Garza West Unit, that he was bitten by any mice, or that the presence of the mice placed him at a substantial risk of serious harm. Furthermore, Plaintiff offers no facts indicating that any named defendant was aware of any risks posed to Plaintiff by the mice

infestation or that any named defendant chose to disregard such risk. At best, Plaintiff's allegations suggest that prison officials may have acted negligently in failing to address the mice infestation.

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims regarding the toilet water flooding his cell and the presence of mice be dismissed as frivolous and/or for failure to state a claim for relief.

### V. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that: (1) Plaintiff's claims for money damages against **Senior Warden M. Crow and Assistant Warden I. Wysocki** in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claims seeking injunctive relief against **Defendants** in their individual and official capacities be **DISMISSED**; and (3) Plaintiff's remaining claims against **Defendants** in their individual capacities for monetary relief be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1). It is respectfully recommended further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

Respectfully submitted on May 13, 2022.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).